UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on November 13, 2020

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 20-cr-252 |
| | : | |
| v. | : | Grand Jury Original |
| | : | |
| STEPHEN PAUL EDMUND SUTTON | : | VIOLATIONS: |
| | : | 18 U.S.C. § 371 (Conspiracy) |
| and | : | 18 U.S.C. § 666 (Theft Concerning a Program |
| | : | Receiving Federal Funds) |
| ATIF HUSSAIN GILLANI | : | 18 U.S.C. § 2 (Aiding and Abetting and |
| | : | Causing an Act to be Done) |
| Defendants. | : | |
| | : | Criminal Forfeiture: |
| | : | 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), |
| | : | and 21 U.S.C. § 853(p) |

## INDICTMENT

The Grand Jury charges that:

### Background

At times material to this Indictment:

1. The United States Agency for International Development ("USAID") was a United States government agency headquartered in Washington, D.C. USAID was the lead United States government agency that worked to end extreme global poverty and enable resilient democratic societies to realize their potential. USAID fulfilled its mission, in part, by sponsoring and funding development programs around the world.

2. Prime Contractor was an international professional services firm headquartered in Washington, D.C. From in or about 2010 through in or about 2015, Prime Contractor implemented a USAID-funded Power Distribution Program in Pakistan obligated at more than $200 million under contract AID-EPP-I-00-03-00006 and related task orders and modifications (the "PDP").

1

Under the PDP, Prime Contractor issued purchase orders to suppliers in Pakistan for certain goods and services, including logistics services.

3. The PDP was a component of United States government assistance to the government of Pakistan to support its energy sector. The PDP was designed to facilitate improvements in Pakistan's government-owned electric power distribution companies through interventions and projects addressing governance issues, technical and non-technical losses, and low revenue collection. The main goal of the PDP was to improve the commercial performance of the participating distribution companies through technology upgrades and improvements in processes, procedures, and practices, as well as training and capacity building.

4. Defendant STEPHEN PAUL EDMUND SUTTON ("SUTTON") was a citizen of the United Kingdom and resided in Pakistan. SUTTON had no residence or last known residence in the United States. SUTTON was employed by Prime Contractor as a Logistics Operations Manager in Pakistan.

5. Defendant ATIF HUSSAIN GILLANI ("GILLANI") was a citizen of Pakistan and resided in Pakistan. GILLANI had no residence or last known residence in the United States. GILLANI was employed by Prime Contractor as a Logistics Manager in Pakistan, and reported to SUTTON.

## COUNT ONE
(Conspiracy)

6. Paragraphs 1 through 5 are incorporated herein.

### The Conspiracy

7. From at least in or about May 2015 and continuing through at least on or about November 24, 2015, in the District of Columbia and elsewhere out of the jurisdiction of any

2

particular State or district, defendants STEPHEN PAUL EDMUND SUTTON and ATIF HUSSAIN GILLANI (collectively "the defendants") knowingly and intentionally conspired with each other, and with other persons known and unknown to the grand jury:

    a.    to commit an offense against the United States, that is, theft concerning a program receiving Federal funds, by obtaining by fraud property that (1) was valued at $5,000 or more, and (2) was owned by and was under the custody and control of an organization that received, in a one year period, benefits in excess of $10,000 under a Federal program involving a contract, while being an agent of such organization, in violation of 18 U.S.C. § 666; and

    b.    to defraud the United States by devising and intending to devise a scheme to defraud and for obtaining money and property from USAID by means of materially false and fraudulent pretenses, representations, and promises, and by concealing material facts.

### The Goal of the Conspiracy

8.    The goal of the conspiracy was for the defendants and other conspirators to enrich themselves and to defraud USAID and Prime Contractor by fraudulently obtaining purchase orders under the PDP, billing for services under the purchase orders, receiving payments under the purchase orders, and distributing the proceeds.

### Manner and Means

9.    It was a part of the conspiracy that the defendants would create and use fake companies, Subcontractor AS and Subcontractor SA, to bid on and to obtain purchase orders, and to receive payments for logistics services under the PDP, including forklift, crane, and container services.

10.    It was further a part of the conspiracy that the defendants would submit and cause to be submitted false and fraudulent bid documents on behalf of Subcontractor AS and Subcontractor SA to obtain purchase orders for logistics services under the PDP.

11. It was further a part of the conspiracy that the defendants would use their positions and connections with Prime Contractor to improperly award and influence the award of purchase orders for logistics services under the PDP to Subcontractor AS and Subcontractor SA.

12. It was further a part of the conspiracy that the defendants would hire and cause to be hired local suppliers, which were not authorized to work on the purchase orders, to provide the logistics services under the purchase orders on behalf of Subcontractor AS and Subcontractor SA.

13. It was further a part of the conspiracy that the defendants would pay and cause others to pay the local suppliers a fraction of the rates charged under the purchase orders.

14. It was further a part of the conspiracy that the defendants would submit and cause to be submitted false and fraudulent documents on behalf of Subcontractor AS and Subcontractor SA requesting payments under the purchase orders.

15. It was further a part of the conspiracy that the defendants would use their positions and connections with Prime Contractor to authorize payments to Subcontractor AS and Subcontractor SA under the purchase orders.

16. It was further a part of the conspiracy that the defendants would use bank accounts in the names of other conspirators or the fake companies to receive payments from Prime Contractor under the purchase orders.

17. It was further a part of the conspiracy that the defendants would distribute and cause to be distributed the proceeds from the conspiracy to themselves and others through bank transfers and cash withdrawals.

### Overt Acts

18. In furtherance of the conspiracy and to effect the objects thereof, the defendants and co-conspirators not indicted herein committed the following overt acts, among others, in the District of Columbia and elsewhere out of the jurisdiction of any particular State or district:

    a. On or about the dates listed below, in Pakistan, GILLANI prepared and submitted documents requesting payment for invoices submitted by Subcontractor AS and Subcontractor SA under PDP purchase orders 4013-AGS-340A, 4013-AGS-340B, and 4013-ASMC-381, as listed below:

| Date | PO | Sub-contractor | Gross Amount PKR (Pakistan Rupees) | Net Amount PKR (Pakistan Rupees) | Approximate Amount USD (U.S. Dollars) |
|---|---|---|---|---|---|
| 6/1/15 | 340B | AS | 854,334 | 837,247 | $8,216 |
| 6/1/15 | 340A | SA | 589,086 | 577,304 | $5,665 |
| 7/1/15 | 340B | AS | 2,278,224 | 2,232,660 | $21,948 |
| 7/1/15 | 340A | SA | 1,570,896 | 1,539,478 | $15,119 |
| 7/31/15 | 340B | AS | 2,183,298 | 2,139,632 | $21,001 |
| 8/4/15 | 340A | SA | 1,439,988 | 1,411,188 | $13,860 |
| 8/18/15 | 381 | AS | 785,000 | 769,300 | $7,546 |
| 8/25/15 | 381 | AS | 785,000 | 675,700 | $6,489 |

    b. On or about August 7, 2015, in Pakistan and elsewhere, GILLANI sent an email to an Accounts Officer for Prime Contractor approving payment of two invoices listed above: (1) invoice submitted July 31, 2015, for Subcontractor AS in the gross amount of 2,183,298 PKR; and (2) invoice submitted August 4, 2015, for Subcontractor SA in the gross amount of 1,439,988 PKR.

    c. After the Accounts Officer declined to process the invoice for Subcontractor AS because Subcontractor AS did not have a business bank account or National Tax Number (NTN), on or about August 10, 2015, in Pakistan and elsewhere, SUTTON sent an email to the Accounts Officer requesting that the invoice be paid.

5

d. On or about the dates listed below, in Pakistan and elsewhere, the defendants received, through bank accounts in the names of Subcontractor SA and the supposed owner of Subcontractor AS, the payments listed below under PDP purchase orders 4013-AGS-340A, 4013-AGS-340B, and 4013-ASMC-381:

| Date | PO | Sub-contractor | Amount PKR | Approximate Amount USD |
|---|---|---|---|---|
| 6/4/15 | 340B | AS | 837,247 | $8,216 |
| 6/4/15 | 340A | SA | 577,304 | $5,665 |
| 7/7/15 | 340B | AS | 2,232,660 | $21,948 |
| 7/7/15 | 340A | SA | 1,539,478 | $15,119 |
| 8/10/15 | 340B | AS | 2,139,632 | $21,001 |
| 8/10/15 | 340A | SA | 1,411,188 | $13,860 |
| 8/20/15 | 381 | AS | 769,300 | $7,546 |
| 9/9/15 | 381 | AS | 675,700 | $6,489 |
| 9/14/15 | 340B | AS | 2,976,879 | $28,514 |
| 9/14/15 | 340A | SA | 2,116,782 | $20,256 |
| 10/27/15 | 340B | AS | 1,960,000 | $18,617 |
| 10/30/15 | 340A | SA | 1,967,111 | $18,636 |
| 11/11/15 | 381 | AS | 306,000 | $2,899 |
| 11/24/15 | 340B | AS | 558,165 | $5,298 |

e. In or about May or June 2015, in Pakistan, SUTTON gave GILLANI the account information for a bank account in SUTTON's wife's name ending in 3601 for the purpose of receiving proceeds from the conspiracy.

f. On or about the dates listed below, in Pakistan and elsewhere, GILLANI transferred from his bank account ending in 4401 to SUTTON, using SUTTON's wife's bank account ending in 3601, proceeds from the conspiracy in the amounts listed below:

6

| Date | Amount PKR | Approximate Amount USD |
|---|---:|---:|
| 6/16/15 | 80,000 | $786 |
| 7/13/15 | 500,000 | $4,917 |
| 7/15/15 | 58,000 | $570 |
| 8/20/15 | 400,000 | $3,924 |
| 8/21/15 | 310,000 | $3,040 |
| 9/19/15 | 450,000 | $4,312 |
| 9/21/15 | 250,000 | $2,395 |
| 11/16/15 | 195,000 | $1,850 |

**(Conspiracy to Commit Theft Concerning a Program Receiving Federal Funds and to Defraud the United States, in violation of Title 18, United States Code, §§ 371 and 666)**

### COUNT TWO
**(Theft Concerning a Program Receiving Federal Funds)**

19. Paragraphs 1 through 5, and 7 through 17 are incorporated herein.

20. In the one year period of 2015, Prime Contractor was an organization that received benefits in excess of $10,000 under a Federal program involving a contract, that is, the PDP.

21. From at least in or about May 2015 and continuing through at least on or about November 24, 2015, in the District of Columbia and elsewhere out of the jurisdiction of any particular State or district, defendants STEPHEN PAUL EDMUND SUTTON and ATIF HUSSAIN GILLANI (collectively "the defendants"), conspiring with and aided and abetted by each other, being agents of Prime Contractor, obtained by fraud property that was valued at $5,000 or more, and that was owned by and was under the custody and control of Prime Contractor, that is, payments totaling approximately $194,064 under PDP purchase orders 4013-AGS-340A, 4013-AGS-340B, and 4013-ASMC-381, issued to Subcontractor AS and Subcontractor SA, including the following:

7

| Date | PO | Sub-contractor | Amount PKR | Approximate Amount USD |
|---|---|---|---|---|
| 6/4/15 | 340B | AS | 837,247 | $8,216 |
| 6/4/15 | 340A | SA | 577,304 | $5,665 |
| 7/7/15 | 340B | AS | 2,232,660 | $21,948 |
| 7/7/15 | 340A | SA | 1,539,478 | $15,119 |
| 8/10/15 | 340B | AS | 2,139,632 | $21,001 |
| 8/10/15 | 340A | SA | 1,411,188 | $13,860 |
| 8/20/15 | 381 | AS | 769,300 | $7,546 |
| 9/9/15 | 381 | AS | 675,700 | $6,489 |
| 9/14/15 | 340B | AS | 2,976,879 | $28,514 |
| 9/14/15 | 340A | SA | 2,116,782 | $20,256 |
| 10/27/15 | 340B | AS | 1,960,000 | $18,617 |
| 10/30/15 | 340A | SA | 1,967,111 | $18,636 |
| 11/11/15 | 381 | AS | 306,000 | $2,899 |
| 11/24/15 | 340B | AS | 558,165 | $5,298 |
| Total | | | 20,067,446 | $194,064 |

**(Theft Concerning a Program Receiving Federal Funds, and Aiding and Abetting, in violation of Title 18, United States Code, §§ 666 and 2)**

## FORFEITURE ALLEGATION

1. Upon conviction of any of the offenses alleged in Counts One and Two of this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States will also seek a forfeiture money judgment against the defendants equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses.

2. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty;

the defendants shall forfeit to the United States any other property of the defendants, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code,
§§ 981(a)(1)(C); Title 28, United States Code, § 2461(c);
and Title 21, United States Code, § 853(p))**

A TRUE BILL

FOREPERSON.

*[signature]*

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

9